IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES DAVIS, #317-735,       *
      Plaintiff,
                                *

   v.                                    CIVIL ACTION NO. DKC-06-1371
                                *
WARDEN,
      Defendant.      *
                                ******

### MEMORANDUM

On August 25, 2006, Plaintiff filed a court-directed amended civil rights complaint pursuant to 42 U.S.C. §1983. Paper No. 8. Counsel for Defendants Correctional Officer Weaver and Warden Galley has filed a dispositive motion (Paper No. 20), which shall be treated as a Motion for Summary Judgment.[1] Plaintiff has responded. Paper No. 25. No hearing is needed to resolve whether Plaintiff is entitled to relief in this case. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' motion for summary judgment shall be granted in part and denied in part.

### 1. Factual Background

Plaintiff claims that on April 9, 2006, at approximately 11:00 a.m., Officer Weaver was accompanying inmate workers who were collecting lunch food trays from segregation inmates. Plaintiff squatted down to his feed slot when the slot was opened so that he could speak with Weaver. Plaintiff claims that Weaver said, "shit isn't going to change you little bitch," then intentionally shoved the tray back into the food slot., hitting Plaintiff in the right eye and on the right side of the nose. Plaintiff states that he fell on the floor as a result of the blow. His request to be seen by medical staff was denied. On an unspecified date x-rays were taken of Plaintiff's right

---

[1] Also pending is Plaintiff's Motion for Leave to Proceed in Forma Pauperis (Paper No. 9), which shall be granted.

eye. Plaintiff states that as a result of Weaver's actions he was referred to a specialist at an outside hospital. Paper No. 8.

Defendants contend the assault never occurred. Paper No. 20. As a result of an inquiry by Barbara Newlon, Medical Administrator at the Western Correctional Institution, Officer Gary Farris conducted an investigation of the alleged assault. Officer Farris reviewed the Housing Unit #4, April 9, 2006, video tape for the 8-4 shift.[2] The tape revealed that Weaver participated in feed up at that time. Inmate food service workers placed trays in the feed slots and Officer Wilson assisted in securing the slots. At approximately 11:30 a.m. Weaver supervised the collection of the trays with inmate food service workers. Weaver did not handle the food trays. *Id.*, Ex. 4-5.

In the information report prepared on April 20, 2006, in conjunction with the investigation of Plaintiff's claim, Weaver indicates that on April 9, 2006, Weaver was assigned to Housing Unit #4. At approximately 11:15 a.m. he and Officer Wilson conducted "feed up" on the B tier. Weaver opened the feed slots so that food trays could be passed into the cells by inmate food workers. The slots were then closed by Wilson. At approximately 11:40 a.m. Weaver returned with the inmate food workers to to collect the trays, opening the feed slot so that the inmates in the cell could slide the trays and trash out to the inmate food worker. The inmates wiped down the feed slot before Weaver closed them. Weaver stated in his information report that he did not touch Plaintiff or Plaintiff's cell mate's tray or hit anyone with a tray.[3] *Id.*, Ex. 1.

---

[2]A copy of the tape has been provided to the court. *Id.*, Ex. 3. Plaintiff apparently was not provided an opportunity to review the tape himself, and he filed a motion seeking such an opportunity. The motion was erroneously returned and not filed, see paper 26, as "discovery material." Unless Plaintiff is permitted to review the tape, it cannot be considered by the court.

[3]Defendants have also provided to the court copies of anonymous letters received by correctional officials from other inmates alleging that Plaintiff conspired with another inmate to falsely accuse Defendant Weaver of assault. *Id*., Ex. 6 and 7. Those letters also were not provided to Plaintiff and will not be considered by the court.

Weaver's declaration in support of the dispositive motion reiterates that his duty on the date of the incident was to unlock each cell's tray slot while an inmate worker placed the meal tray in the cell. Weaver avers that he did not strike Plaintiff with a meal tray or witness anyone else strike Plaintiff. He further avers that Plaintiff did not ask him for medical treatment or advise him of a need for same. *Id.*, Ex. 2.

On the day of the alleged incident, Plaintiff submitted a sick call slip indicating that he was having bad headaches, nose bleeds, and pain in his right wrist and suffered from a blood clot in his eye. He stated that his symptoms began on April 6, 2006, three days before the alleged assault. *Id.*, Ex. 9, p. 19. Another sick call slip submitted on April 11, 2006, indicated that Plaintiff's eye and head had been injured due to an assault by Weaver. *Id.*, p. 18. Plaintiff was evaluated in the chronic care clinic by Dr. Tessema on April 12, 2006. Plaintiff stated that he had been hit on the right eye by an officer on April 9, 2006. A hematoma was noted on both sides of the right eye as well as "a small superficial abrasion healed over the medial end of the lower eye lid." *Id.*, p. 14. The report noted Plaintiff had been diagnosed with tonic-clonic primary generalized seizure disorder and that Plaintiff "is a known non-compliant" in terms of taking his regularly-prescribed medication. *Id.*, p. 16-17. An x-ray taken of Plaintiff's right eye revealed no evidence of fracture. *Id.*, p. 10. Plaintiff was evaluated by an off-site opthamalogist on September 12, 2006, and diagnosed as suffering from bilateral anterior uveitis,[4] mild. *Id.*, p. 9.

---

[4]Uveitis is inflammation of the uveal tract which consists of the iris, ciliary body, and choroid. The etiology of uveitis is varied. It may be caused by trauma, infection, an immunological response, or be of unknown origin. *Id.*, Ex. 11.

3

**2. Standard of review**

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

**3. Analysis**

**A.     Exhaustion**

Defendants contend that Plaintiff's complaint should be dismissed due to his failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations, and his claims must be dismissed, unless he has satisfied the administrative

4

exhaustion requirement under the PLRA or Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement compels a prisoner to comply with prison grievance procedures. *See Jones v. Bock,* 127 S.Ct. 910, 923 (2007). A prisoner must pursue a grievance until he receives a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a lawsuit for failure to exhaust where a federal prisoner did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, a prisoner has ten calendar days to file an appeal with the Commission of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

The documentary evidence shows that Plaintiff completed a Request for Administrative Remedy dated April 10, 2006, one day after the alleged incident. Paper No. 20, Ex. 7. Plaintiff states that he delivered the ARP to correctional employees in a sealed envelope on that same date. Paper No. 25. The ARP form indicates that it was received on April 21, 2006, by the ARP Unit who

denied same as untimely. *Id.* Plaintiff noted an appeal; however, the dismissal of the original ARP was upheld. *Id.*, Ex. 8. Given this information, the court cannot say Plaintiff did not exhaust his "available" remedies or that defendants did not frustrate his efforts at exhausting same. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000).

**B.     Excessive Force**

Analysis of cruel and unusual punishment claims "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). In order to meet the subjective component of this test in an excessive force case, a prisoner must show that the force was applied "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U S. 1, 6-7 (1992) In making this determination, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Insofar as the objective element of an excessive force case is concerned, the prisoner "need not show that [the] force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action. All that is necessary is proof of more than de minimis pain or injury." *Williams*, 77 F.3d at 761(citation omitted); *see also Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). Certainly an eye injury resulting from an assault and requiring medical attention would satisfy the objective element under *Williams*.

The evidence concerning the subjective component of an excessive force claim is in conflict. The sworn statement of Officer Weaver, corroborated by the Affidavit of Officer Farris based on his

6

review of the video tape of the tray distribution and collection demonstrate that no assault occurred. Moreover, Plaintiff's medical records belie his contention that he was assaulted by Weaver. Plaintiff's sick call slip submitted on the date of the alleged incident makes no mention of a blow to the eye or head and indicates Plaintiff had been suffering from pain in his head and eye for three days.

On the other hand, Plaintiff submitted, along with the Discovery Motion that was improperly returned, two declarations: one from himself attesting to the truth of his allegations, and the other from Calvin Leigh supporting Plaintiff's version of the events.  They are attached to this Memorandum so that they will be filed in the electronic record.

Accordingly, Officer Weaver's motion for summary judgment will be denied.

**C.   Respondeat Superior**

Plaintiff has alleged no action or inaction on the part of Defendant Galley other than naming him as a defendant in the Complaint.  To the extent Plaintiff seeks to hold Warden Galley liable as a supervisor of the prison, his claim fails as the doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. §1983.  *See Monell v. New York Dept. of Social Services,* 436 U. S. 658, 691 (1978).

**4. Conclusion**

Given the foregoing, Defendants' Motion for Summary Judgment is granted as to Warden Galley but denied as to Officer Weaver.  Inasmuch as the case will now proceed to formal discovery and trial, counsel will be appointed to represent Petitioner.  A separate Order shall be entered in accordance with this Memorandum.

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　United States District Judge

7